MEMORANDUM **
Julian and John Reynoso appeal from the district court’s order denying their petition for a writ of habeas corpus. This court certified for appeal the issue of “whether the prosecutor violated [the Reynosos’] rights under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), during jury selection.” Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2258, we reverse the judgment of the district court.
I
John and Julian Reynoso were tried jointly for the murder of Mario Martinez. After jury selection was completed, but before the jury was sworn, Julian filed a Batson/Wheeler[1] motion objecting to the prosecutor’s peremptory challenges to two Hispanic jurors. Noting that “the People did only exercise ... four [peremptory] challenges and two of those were Hispanic,” the trial court requested “that the People give their reasons why they excused those two.” With respect to one of the two Hispanic jurors, the prosecutor responded:
In terms of [Elizabeth G.], the People dismissed [Elizabeth G.] because she was [a] customer service representative. In terms of that, we felt that she did not have enough educational experience. It seemed like she was not paying attention to the proceedings and the People felt that she was not involved in the process. The People felt she would not be a good juror.
*346 Without conducting a comparative juror analysis or making any factual findings, the trial court held: “I accept those reasons as being not based upon race or ethnicity. And I don’t find that there has been a violation of Wheeler and that the— there was not a systematic exclusion of a recognized ethnic group, i.e., Hispanics in this case. So the motion is denied.” Other than noting that defense counsel had also excused one Hispanic prospective juror earlier in the proceeding, the trial court made no further comments regarding the Reynosos’ Batson/Wheeler motion. A jury consisting entirely of white jurors convicted the two brothers of first degree murder and related offenses.
On direct appeal, the California Court of Appeal reversed the Reynosos’ convictions, holding that the prosecution had unconstitutionally exercised a peremptory challenge on the basis of race. People v. Reynoso, 114 Cal.Rptr.2d 635, 645 (Cal.Ct.App.2001). In a four to three decision, the California Supreme Court reversed. People v. Reynoso, 31 Cal.4th 903, 3 Cal.Rptr.3d 769, 74 P.3d 852, 870 (2003). The majority held that there was nothing in the record to contradict the trial court’s ruling or any reason “to deviate from the customary great deference normally afforded such rulings.” Id. at 869-70 (internal quotations omitted).
John and Julian subsequently filed petitions for writs of habeas corpus in federal court. Their petitions were consolidated, and the District Court for the Eastern District of California denied the consolidated petition in January 2008. The district court determined that the trial court had found the reasons stated by the prosecution for striking the Hispanic jurors were not based on race or ethnicity. Although the district court recognized that a comparative juror analysis might have revealed “a slight weakness” in the prosecution’s rationale, it concluded that the Reynosos had failed to demonstrate that the prosecution’s strike of Elizabeth G. was based on racial bias or pretext. The Reynoso brothers sought and were granted a certificate of appealability in November 2008.
II
We review a district court’s denial of a petition for a writ of habeas corpus de novo. Boyd v. Newland, 467 F.3d 1139, 1143 (9th Cir.2006). Under the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), we may grant habeas relief only if: (1) a state court’s decision “was contrary to, or involved an unreasonable application of, clearly established Federal law”; or (2) “was based on an unreasonable determination of the facts in light of the evidence presented.” 28 U.S.C. § 2254(d)(l)-(2). Because the California Supreme Court’s decision violated both standards, we reverse the district court’s judgment.
A
Batson established a three-step process for evaluating a defendant’s objection to a peremptory challenge: “First, the defendant must make a prima facie showing that a challenge was based on race. Second, the prosecution must offer a race-neutral basis for the challenge. Third, the court must determine whether the defendant has shown ‘purposeful discrimination.’ ” Kesser v. Cambra, 465 F.3d 351, 359 (9th Cir.2006) (en banc) (quoting Batson, 476 U.S. at 98, 106 S.Ct. 1712).
This case turns on the third step of the Batson inquiry. In rejecting the Reynosos’ Batson/Wheeler motion, the trial court held that there was no constitutional violation because there was no “systematic exclusion” of Hispanic jurors. Under Bat-son, however, purposeful discrimination in *347 the exercise of a single peremptory challenge violates the Constitution. See 476 U.S. at 95, 106 S.Ct. 1712 (“A single invidiously discriminatory governmental act is not immunized by the absence of such discrimination in the making of other comparable decisions.” (quotations omitted)); see also United States v. Vasquez-Lopez, 22 F.3d 900, 902 (9th Cir.1994) (“[T]he Constitution forbids striking even a single prospective juror for a discriminatory purpose.”).
On appeal, the California Supreme Court majority accepted the term “systematic exclusion” as “an acceptable shorthand phrase for denoting [Batson/]Wheeler error.” Reynoso, 3 Cal.Rptr.3d 769, 74 P.3d at 868 n. 8. This conclusion, however, runs counter to clearly established federal law. See Batson, 476 U.S. at 95-96, 106 S.Ct. 1712 (“For evidentiary requirements to dictate that several must suffer discrimination before one could object, would be inconsistent with the promise of equal protection to all.” (internal quotation and citation omitted)); Sims v. Brown, 425 F.3d 560, 574 (9th Cir.2005), amended 430 F.3d 1220 (“[T]he trial court’s ruling that it was necessary to show a ‘systematic exclusion’ of prospective jurors was incorrect, as the Constitution forbids striking a single juror for a discriminatory purpose[.]”); United States v. De Gross, 913 F.2d 1417, 1425 (9th Cir.1990) (“Although showing a pattern of systematic exclusion is one way of giving rise to an inference of discrimination, it is not the only way.”); see also People v. Fuentes, 54 Cal.3d 707, 286 Cal. Rptr. 792, 818 P.2d 75, 80 n. 4 (1991) (“The term [systematic exclusion] is not apposite in the Wheeler context, for a single discriminatory exclusion may violate a defendant’s right to a representative jury.” (emphasis added)).
Pointing to the trial court’s use of the conjunctive, the dissent argues that the trial court did not use “systematic exclusion” as shorthand and, in fact, made two separate findings: that there was no Wheeler error, and that there was no systematic exclusion of Hispanic jurors. (Dissenting Op. 351-52.) This is a peculiar reading. The court said: “I accept those reasons as being not based upon race or ethnicity. And I don’t find that there has been a violation of Wheeler and that the— there was not a systematic exclusion of a recognized ethnic group, i.e., Hispanics in this case. So the motion is denied.” The phrase, “and that the — there,” is read more naturally as a linguistic stumble than a purposeful division between two independent conclusions. Neither the California Supreme Court nor the California Court of Appeal interpreted the trial court’s statement as containing two separate findings. Moreover, the dissent’s construction is strongly undermined by the trial court’s next comment — that defense counsel had also excused a Hispanic prospective juror earlier in the proceeding — which underscores the trial court’s misapprehension of what constitutes Wheeler error. See Wheeler, 148 Cal.Rptr. 890, 583 P.2d at 766 n. 30 (“A [prosecutor] does not sustain his burden of justification by attempting to cast a different burden on his opponent.” (overruled on other grounds)). Further, because the trial court failed to conduct any particularized assessment of the prosecution’s proffered justifications, we cannot assume the court simply set forth the proper standard for individualized discrimination under Batson in an inartful manner. “To conclude so would be as novel a proposition as the idea that ‘clear and convincing evidence’ has always meant a ‘preponderance of the evidence.’ ” Johnson v. California, 545 U.S. 162, 166 n. 2, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005) (quotation omitted). We therefore hold that by excusing the trial court’s error, the Cali *348 fornia Supreme Court acted contrary to clearly established federal law.[2]
B
The California Supreme Court decision was also “based on an unreasonable determination of the facts in light of the evidence presented.” 28 U.S.C. § 2254(d)(2). When evaluating a Batson challenge, a court must consider each of the prosecutor’s justifications “within the context of the trial as a whole.” Kesser, 465 F.3d at 359. “If a prosecutor’s proffered reason for striking a [minority] panelist applies just as well to an otherwise-similar [nonminority panelist] who is permitted to serve, that is evidence tending to prove purposeful discrimination” under Batson’s third step. Miller-El v. Dretke (Miller-El II), 545 U.S. 231, 241, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). As a result, courts must conduct comparative juror analyses when considering Batson objections. See Green v. LaMarque, 532 F.3d 1028, 1030 (9th Cir.2008) (“[A] court must undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available .... [which] may include a comparative analysis of the jury voir dire and the jury questionnaires of all venire members, not just those venire members stricken.” (quotations omitted)); Turner v. Marshall, 121 F.3d 1248, 1251—52 (9th Cir.1997) (“A comparative analysis of jurors struck and those remaining is a well-established tool for exploring the possibility that facially race-neutral reasons are a pretext for discrimination.”); see also People v. Lenix, 44 Cal.4th 602, 80 Cal.Rptr.3d 98, 187 P.3d 946, 961 (2008) (“[Under Miller-El II,] evidence of comparative juror analysis must be considered in the trial court and even for the first time on appeal if relied upon by defendant and the record is adequate to permit the urged comparisons”); cf. Snyder v. Louisiana, 552 U.S. 472, 478, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008) (“In [Miller-El II], the Court made it clear that in considering a Batson objection, or in reviewing a ruling claimed to be Batson error, all of the circumstances that bear upon the issue of racial animosity must be consulted.” (emphasis added)).[3]
*349 An evaluation of the state court record in this case shows that the California Supreme Court unreasonably determined that the prosecutor’s stated reasons were not pretextual. The prosecutor’s first reason for excusing Elizabeth G. — her lack of education — is belied by a comparative juror analysis. If we are to assume jurors have attained only the minimum education level required by their occupations, then we would conclude that five white jurors had similar education levels as Elizabeth G. These jurors included a shift supervisor for a canning plant, a housewife, a worker for a dairy products processing plant, a field man for a packing house, and a farmer.[4] Failure to question any of these jurors about their education level or to exclude them on this basis undermines the prosecutor’s justification for striking Elizabeth G. See Miller-El II, 545 U.S. at 246, 125 S.Ct. 2817 (“[T]he state’s failure to engage in any meaningful voir dire examination on a subject the State alleges [causes it concern] is evidence suggesting that the explanation is a sham and a pretext for discrimination.” (quotations omitted)).
In addition, the prosecutor failed to explain how Elizabeth G.’s education level was “related to the particular case to be tried,” as required by Batson, 476 U.S. at 98, 106 S.Ct. 1712. There is little indication that a lack of educational experience would tend to make Elizabeth G. an unfavorable juror for the prosecution. The Reynosos’ case did not involve complicated issues of law that would arguably require a higher level of education; rather, it raised a straightforward issue of self-defense. Cf. United States v. Hinojosa, 958 F.2d 624, 631-32 (5th Cir.1992) (holding that the government’s concern over lack of education was legitimately based on the complex legal issues raised by a fifty-eight count indictment); United States v. Tucker, 773 F.2d 136, 142 (7th Cir.1985) (reasoning that “[t]he prosecutor wanted an educated jury that could understand letters of credit and the other aspects of this complicated commercial transaction, and the four blacks happened to have very little education or commercial experience”).
Our review of the demeanor-based reason for Elizabeth G.’s dismissal is equally unavailing. First, defense counsel disputed that there was anything about Elizabeth G.’s demeanor that indicated she was not paying attention. Second, there was affirmative evidence in the record that Elizabeth G. responded to the trial court’s questions. Third, the prosecution offered nothing to rebut defense counsel’s contention that Elizabeth G. was attentive; instead, the prosecutor retorted that defense counsel had struck a prospective juror who “seemed and looked Hispanic” to the prosecutor.
Because we are not in a position to have observed Elizabeth G.’s demeanor, the “trial court’s first-hand observations [are] of even greater importance” in this situation. Snyder, 552 U.S. at 477, 128 S.Ct. 1203. “[T]he trial court must evaluate not *350 only whether the prosecutor’s demeanor belies a discriminatory intent, but also whether the juror’s demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor.” Id. When “the record does not show that the trial judge actually made a determination concerning [the prospective juror’s] demeanor,” we cannot presume the court credited the prosecution’s assertions. Id. at 479,128 S.Ct. 1203.
As in Snyder, the trial court here failed to make a factual finding regarding Elizabeth G.’s demeanor. We reject Hall’s contention that the court did so when it stated, “I accept those reasons as being not based upon race or ethnicity.” Mere acknowledgment that the prosecutor’s proposed justifications were race-neutral does not amount to a factual finding that Elizabeth G. was inattentive during the proceeding. The dissent’s contrary approach, which would equate acceptance of a peremptory challenge with a finding that any and all of a prosecutor’s assertions were factually correct, (Dissenting Op. 355-56), was squarely rejected by the Supreme Court in Snyder. In that case, the Court held “we cannot presume that the trial judge credited the prosecutor’s assertion that [a prospective juror] was nervous” in reference to the trial court’s statement, “I’m going to allow the challenge.” Snyder, 552 U.S. at 479, 128 S.Ct. 1203. The dissent provides no basis for reaching a contrary result in this entirely analogous situation.
Rather than making a factual finding, the trial court responded to defense counsel with a non-sequitur: It noted that defense counsel had excused a Hispanic prospective juror earlier in jury selection. This excusal was irrelevant, however, because under both California and federal law, the propriety of the prosecution’s peremptory challenges must be determined without regard to the validity of the defendant’s own challenges. See Brinson v. Vaughn, 398 F.3d 225, 234 (3d Cir.2005); People v. Snow, 44 Cal.3d 216, 242 Cal.Rptr. 477, 746 P.2d 452, 456 (1987); Wheeler, 148 Cal.Rptr. 890, 583 P.2d at 766 n. 30 (overruled on other grounds).
Similarly, the fact that the prosecutor accepted the jury fourteen times with Elizabeth G. seated in the jury box does not end our inquiry. To hold so would “provide an easy means of justifying a pattern of unlawful discrimination which stops only slightly short of total exclusion.” Snow, 242 Cal.Rptr. 477, 746 P.2d at 456-57. As noted by the Reynosos, it is “easy for a prosecutor to pass on a minority juror many times in a codefendant trial, and then try to insulate his later challenge against the minority juror by arguing that he passed on the juror several times.” Because “[v]ery few defense attorneys will take the chance of accepting a jury in a murder trial without exercising a large number of challenges,” a prosecutor can “safely wait to exercise his challenges against minority jurors until later in the jury selection process.”[5]
Moreover, this court has previously held that passing or accepting a jury containing minority jurors only to peremptorily challenge those jurors later in the selection process does not refute the inference that the challenges were racially motivated. Williams v. Runnels, 432 F.3d 1102, 1109 (9th Cir.2006). Because our review of the record shows that the prosecutor’s proffered reasons were pretextual, there is no basis in the record for excluding Elizabeth *351 G. other than her race. See Kesser, 465 F.3d at 360 (“If a review of the record undermines the prosecutor’s stated reasons, ... the reasons may be deemed a pretext for racial discrimination.” (quotations omitted)).[6] Accordingly, we hold that by denying the Reynosos’ Batson/Wheeler claim, the California Supreme Court committed constitutional error under Batson. We conclude that the state supreme court decision was both an unreasonable application of clearly established federal law and an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(1) — (2).
Ill
For the foregoing reasons, the judgment of the district court is REVERSED and the case is REMANDED with instructions to grant the writs.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

. People v. Wheeler, 22 Cal.3d 258, 148 Cal. Rptr. 890, 583 P.2d 748 (1978), is the California analogue of Batson, although it articulates somewhat different standards. In this case, we review for federal constitutional error under Batson.

. The dissent misunderstands our decision when it suggests we wrongfully accuse the California Supreme Court majority of failing to recognize that a single racially motivated peremptory challenge violates Batson. (See Dissenting Op. 352.) Although the California Supreme Court majority may have used the correct wording of the legal standard for evaluating a Batson claim in the footnote cited by the dissent (see Dissenting Op. 351-52), its actual decision was contrary to clearly established federal law because it condoned the trial court’s use of the erroneous “systematic exclusion” standard and then deferred to the trial court's conclusion that used the tainted erroneous standard in order to hold that a Batson error had not occurred. See Lewis v. Lewis, 321 F.3d 824, 829 (9th Cir.2003) ("Because [the state appellate court's] decision affirmed the trial court and adopted one of the reasons cited by the trial court, ... our analysis will necessarily include discussion of the trial court's decision as well.”).

. This court recently held that a trial court’s failure to conduct a comparative juror analysis does not mandate de novo review of a Batson claim. Cook v. LaMarque, 593 F.3d 810, 816 n. 2 (9th Cir.2010). We therefore apply AEDPA deference. Contrary to the dissent’s suggestion, we do not hold that the California Supreme Court's failure to undertake a comparative juror analysis in and of itself mandates habeas relief. (See Dissenting Op. 352-55.) Instead, in applying comparative juror analysis to a state court's factual determination in a Batson context, we follow a long line of Ninth Circuit cases, including Cook. See Cook, 593 F.3d at 815-18; Ali v. Hickman, 584 F.3d 1174, 1180-95 (9th Cir.2009); Green, 532 F.3d at 1030-33; Kesser, 465 F.3d at 358-71. The dissent’s reference to Thaler v. Haynes, -U.S. -, 130 S.Ct. 1171,-L.Ed.2d-- (2010) (per curiam), is not relevant. (See Dissenting Op. 353.) That case rejects a "categorical rule” that a trial judge who did not witness a juror's demeanor *349 during voir dire cannot fairly evaluate a Bat-son challenge. Thaler, 130 S.Ct. at 1175. Thus, it does not disturb our analysis.

. Warden James Hall attempts to distinguish these jurors on the basis of their professions and past jury experience. However, the prosecutor in this case did not dismiss Elizabeth G. based on her profession or lack of past jury experience. The prosecutor’s proffered reasons for dismissing Elizabeth G. were her presumed lack of education and her demean- or. Accordingly, we examine only those justifications. See Miller-El II, 545 U.S. at 252, 125 S.Ct. 2317 ("[A] prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives.”).

. For a more detailed description of the ease with which prosecutors in this case could wait before peremptorily challenging Elizabeth G., see Justice Moreno's dissent in Reynoso, 3 Cal.Rptr.3d 769, 74 P.3d at 879 n. 6.

. The dissent’s assertion that the record contains no "demonstrable evidence of racial bias by the prosecutor,” (Dissenting Op. 356), simply ignores the probative failure of the prosecutor to strike similarly situated white jurors. See Miller-El II, 545 U.S. at 241, 125 S.Ct. 2317 (describing such behavior as "powerful’’ evidence of purposeful discrimination). As noted, affirmative evidence also exists in the record showing that the prosecutor’s demean- or-based reason for striking Elizabeth G. was pretextual. See McClain v. Prunty, 217 F.3d 1209, 1221 (9th Cir.2000) ("Where the facts in the record are objectively contrary to the prosecutor’s statements, serious questions about the legitimacy of a prosecutor's reasons for exercising peremptory challenges are raised.”).