Filed 5/15/25  P. v. Reynoso CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JULIAN JESUS REYNOSO,<br><br>Defendant and Appellant. | F086133<br><br>(Super. Ct. Nos. VCF042048C-99,<br>VCF252597)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Brett R. Alldredge, Judge.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and David A. Lowe, Plaintiff and Respondent.

-ooOoo-

In 1999, appellant Julian Jesus Reynoso and his codefendant and brother, John Paul Reynoso, were convicted by jury of the first degree murder of Mario Martinez (Pen. Code,[1] § 187), among other offenses and enhancements.[2]

In 2010, after extensive postconviction proceedings, the defendants' convictions were reversed following the Ninth Circuit Court of Appeals' consideration of their consolidated petition for writ of habeas corpus. (See *Reynoso v. Hall* (9th Cir. 2010) 395 Fed.Appx. 344.) The federal court found that the prosecutor had violated the defendants' rights under *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*) during jury selection.[3]

On October 1, 2012, Julian pleaded no contest to voluntary manslaughter (§ 192, count 1) and assault with a deadly weapon (§ 245, subd. (a)(2), count 2). In addition, he admitted that both crimes were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)). With respect to count 1, Julian further admitted that a principal was armed with a firearm (§ 12022, subd. (a)(1)), and as to count 2, that he had personally used a firearm in the commission of the offense (§ 12022.5, subd. (a)(1)).[4] In accordance with a negotiated plea agreement, Julian was sentenced to an aggregate term of 29 years eight months in state prison.[5]

---

[1] All further undefined statutory citations are to the Penal Code unless otherwise indicated.

[2] Because the defendants share the same last name, we refer to them by their first names to avoid confusion. No disrespect is intended.

[3] We refer to the violation as "*Batson/Wheeler*" error throughout this opinion because the motion challenging the issue in the trial court below was made pursuant to *Batson* and *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*).

[4] John also entered a plea to these crimes but admitted that he had personally used a firearm in the commission of the voluntary manslaughter. He is not a party to this appeal.

[5] In 2012, Reynoso was convicted by plea and sentenced in Tulare County Superior Court case No. VCF042048C-99 for voluntary manslaughter and assault with a

On January 5, 2022, Julian filed a petition for resentencing under former section 1170.95, now renumbered as section 1172.6. Following the appointment of counsel, the submission of briefs by the parties, and an evidentiary hearing, the trial court denied Julian's petition.

Julian raises multiple claims on appeal. First, he contends that the trial court improperly admitted partial reporter's transcripts from his 1999 murder trial at the evidentiary hearing on his section 1172.6 petition. According to Julian, because his murder conviction had been reversed, and none of the transcripts relied upon had been authenticated, the court could not consider this evidence. He further contends that the trial court improperly relied on hearsay to give context to portions of the transcripts that it had relied upon in denying his petition. Second, Julian asserts that the trial court erred by failing to find that he had acted with reckless indifference to human life, and that there is insufficient evidence supporting the court's determination that he had acted as a major participant "in the murder."

We reach the following conclusions: First, we conclude that the reporter's transcripts from Julian's murder trial were admissible at the section 1172.6 evidentiary hearing on his petition. To the extent that Julian contends that the trial court relied upon hearsay to provide context to the witnesses' testimony in those transcripts, we conclude

_____

deadly weapon, and in Tulare County Superior Court case No. VCF252597 for possession of a weapon while in custody. On January 5, 2022, he filed a petition for resentencing under former Penal Code section 1170.95 (now section 1172.6), identifying only case No. VCF252597. That case number was used throughout the proceedings and in the notice of appeal filed after the petition was denied. Upon review, it appeared the issues on appeal related to case No. VCF042048C-99, which was inadvertently omitted from the notice of appeal.

On April 29, 2025, we issued an order notifying the parties of our intent to construe the notice of appeal—filed on April 13, 2023—as encompassing both case Nos. VCF252597 and VCF042048C-99. No objections were filed within the 10-day response period, and we now construe the notice accordingly.

that Julian's failure to object resulted in forfeiture of his claim on appeal. Julian's added assertion that the records were not authenticated is, likewise, forfeited. Second, we conclude that Julian's contention that the trial court erred by failing to make findings specific to whether he acted as a major participant with reckless indifference to human life is meritless as the record lacks any affirmative indication that this case was prosecuted under the felony murder rule.

However, we conclude that in light of the sparse nature of the record made available to this court, there is insufficient evidence to support the trial court's conclusion that Julian is ineligible for section 1172.6 resentencing relief. We therefore reverse the trial court's order and remand the matter back to the lower court for a new evidentiary hearing.

## FACTUAL AND PROCEDURAL HISTORY

The record does not contain complete reporter's transcripts from Julian's 1999 murder trial. Although partial reporter's transcripts were attached to the prosecutor's supplemental trial brief, filed on January 5, 2023, the transcripts furnished do not provide necessary context to the events surrounding the shooting. We therefore recite a summary of the facts set forth in our Supreme Court's decision in *People v. Reynoso* (2003) 31 Cal.4th 903 at page 908:[6]

> "Defendant John Reynoso and his brother Julian were at a residence with several others, including the murder victim, Mario Martinez. John Reynoso and Martinez got into an argument, which culminated in [John] fatally shooting Martinez in the chest at point-blank range with a shotgun. [John] admitted shooting Martinez, but claimed he did so because he was in fear for his brother Julian's life. Julian's defense was that he did not aid or abet his brother and had no prior knowledge that John was going to shoot Martinez. Julian himself was

---

[6] We recite the factual summary in our Supreme Court's opinion for the limited purpose of providing context to Julian's conviction. We do not rely upon these facts in evaluating the claims raised by the parties on appeal.

4.

armed with a handgun and threatened one of those present with it as the two brothers fled. Both defendants were convicted of first degree murder. John Reynoso was found to have used a firearm and inflicted great bodily injury during the commission of the murder within the meaning of Penal Code section 12022.53, subdivision (d). Julian Reynoso was also convicted of assault with a firearm, knowingly and maliciously dissuading a witness, and being an accessory after the fact."

## DISCUSSION

**I.     The Trial Court's Consideration of the Reporter's Transcripts from Julian's Murder Trial**

At the evidentiary hearing, the trial court considered partial reporter's transcripts from Julian's 1999 murder trial to determine whether the prosecutor had proven that Julian was ineligible for resentencing relief under section 1172.6. Julian challenges the trial court's reliance upon these transcripts on several grounds.

First, he contends that the court was prohibited from relying upon eyewitness testimony in the transcripts because his murder conviction was reversed by the federal court. Second, he claims that the prosecutor's failure to authenticate the reporter's transcripts violated Evidence Code section 1401. Finally, Julian asserts that the trial court improperly relied upon hearsay in giving context to the witnesses' testimony in the transcripts relied upon.

We conclude the following: First, the trial court was permitted to rely upon the reporter's transcripts from Julian's murder trial at the evidentiary hearing on his petition for resentencing, notwithstanding the fact that his murder conviction was reversed for a *Batson/Wheeler* error. With respect to Julian's second and third contentions, we conclude that trial counsel's failure to timely assert these claims below resulted in forfeiture of these claims on appeal. We further conclude that Julian's alternative claim that his trial counsel was constitutionally ineffective for not preserving these claims is unpersuasive, as he has not shown that he has suffered prejudice.

5.

## A. Background

On August 22, 2022, following extensive briefing and argument by the parties, the trial court concluded that the evidence presented at Julian's murder trial, including, "transcripts of witness testimony, stipulated evidence, and matters judicially noticed, if any" may be considered at the evidentiary hearing on his petition for resentencing. The trial court clarified that the prosecutor's theory of the case was that Julian was guilty of murder under the law as amended after January 1, 2019, as a direct aider and abettor.

The court observed that Julian had the opportunity to contest the evidence admitted at his murder trial, and the consideration of that evidence at his section 1172.6 evidentiary hearing would not implicate due process concerns. And, although Julian's murder conviction was reversed by the Ninth Circuit Court of Appeals, the conviction was reversed for a *Batson/Wheeler* violation. According to the trial court, while the jury's findings were invalidated by the federal court's decision, "nothing in the Ninth Circuit's decision, or in any other appellate determination on a petitioner's case, supports that the admission of any evidence at his trial was likewise invalidated." The court further held that the authorities cited by Julian did not suggest that the reversal of a judgment based on a *Batson/Wheeler* error affects the admissibility of trial evidence from that conviction in a subsequent evidentiary hearing under section 1172.6, subdivision (d)(3).

Trial counsel objected to the court's ruling, maintaining that the record of conviction consisted only of Julian's plea to voluntary manslaughter.[7]

---

[7] Section 1172.6, as originally enacted, stated that "the record of conviction" was admissible at an evidentiary hearing. (Former § 1170.95, subd. (d)(3), Stats. 2018, ch. 1015, § 4.) But even this version of the statute, which was effective until January 1, 2022, permitted the parties to "offer new or additional evidence to meet their respective burdens" at an evidentiary hearing. (*Ibid*.) Thus, even if the challenged transcripts are not part of the record of conviction, they were admissible as "new or additional evidence." (§ 1172.6, subd. (d)(3).)

*The Trial Court's Ruling on Julian's Petition*

On March 27, 2023, following further argument by the parties, the trial court concluded that the prosecutor had proven that Julian was guilty of voluntary manslaughter as a direct aider and abettor, and that he had shared the actual killer's murderous intent (express malice). No witnesses were called to testify at the evidentiary hearing. Rather, the trial court explained that its findings were based upon the partial reporter's transcripts from Julian's murder trial that had been attached as exhibits to the prosecutor's supplemental trial brief.

> The court explained that the following evidence supported its determination:
>
> "[THE COURT]: [D]uring the jury trial in 1999, a witness by the name of [M.L.E.] testified to a number of things: That at the time this gentlemen, Mr. Martinez, was shot to death by Julian Reynoso's brother John …. Julian was holding onto Mario's right arm, that the victim was trying to get free of that hold, that when he was shot by John, Julian was still holding onto [Martinez's] right arm. He never left his side. The struggle continued despite the fact that [Martinez] was trying to get away from Julian.
>
> "The witness by the name of [A.E.] testified when [John and Julian] came out of the bedroom, Julian took Mr. Martinez by the right arm with one hand and was searching him with the other. [Martinez's] hands were down by his side, and Julian came out of the door."

The trial court recited additional testimony in the partial transcripts which demonstrated that Julian was holding onto Martinez's arm as Martinez struggled to free himself, and that Julian continued searching Martinez even after Martinez had been shot. Referring to Exhibit No. 9, the court further observed that during the defendants' murder trial, the court had denied a defense motion for a directed verdict on Julian's first degree

murder charge, citing the presence of uncontradicted " ' "circumstantial evidence … [that] both the defendants were in the bedroom together." ' "[8]

The court concluded that Julian was "an active and major participant in the murder of Mr. Martinez," and that he was also "an aider and abettor." Following further argument by the parties, the trial court added that Julian had acted with express malice and that its findings were made beyond a reasonable doubt.

### B. Section 1172.6 Proceedings

If the trial court determines that the petitioner has made a prima facie showing of entitlement to relief, it must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c), (d).) The prosecution bears the burden of proving, "beyond a reasonable doubt," that the petitioner is ineligible for resentencing. (§ 1172.6, subd. (d)(3).) At the evidentiary hearing, the trial court may make factual findings, credibility determinations, and weigh evidence. (*People v. Harden* (2022) 81 Cal.App.5th 45, 51.)

"Although the parties may offer new or additional evidence to meet their respective burdens, section 1172.6, subdivision (d)(3) does not contemplate a whole new trial on all the elements of murder. [Citation.] Rather, '[t]he retroactive relief provided by [section 1172.6] is a legislative "act of lenity" intended to give defendants serving otherwise final sentences the benefit of ameliorative changes to applicable criminal laws and does not result in a new trial or increased punishment.' [Citations.] Thus, the focus at the evidentiary hearing phase of [a section] 1172.6 petition is 'on evidence made relevant by the amendments to the substantive definition of murder,' which, in the context of section 188, requires 'the prosecution to prove that all principals to a murder acted with malice aforethought.' " (*People v. Vargas* (2022) 84 Cal.App.5th 943, 952.)"While the superior court acts as an independent fact finder in determining whether the People have met their burden [at the evidentiary hearing], on appeal, the reviewing

---

**[8]** The court was referring to the fact that Julian and John were in a bedroom together just moments before the shooting occurred, and that they must have been discussing the victim.

court applies the substantial evidence standard to the superior court's findings." (*People v. Vargas, supra*, 84 Cal.App.5th at p. 951.)

### C. Analysis

#### 1. Admissibility of the Report's Transcripts from Julian's Murder Trial

Julian contends that the trial court erred by ruling that the reporter's transcripts from his 1999 murder trial were admissible at his evidentiary hearing, given that his murder conviction was reversed. We conclude otherwise. While the jury's findings from Reynoso's murder trial were null and void and could not be used to determine his eligibility for resentencing relief under section 1172.6, the evidence admitted at his trial could still be considered by the trier of fact.

We begin our analysis with an examination of the plain language of subdivision (d)(3) of section 1172.6, which governs the admissibility of evidence at an evidentiary hearing. This section provides:

> "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872 shall be excluded from the hearing as hearsay, unless the evidence is admissable pursuant to another exception to the hearsay rule." (§ 1172.6, subd. (d)(3).)

Ordinarily, a witness's former testimony is considered hearsay and must fall within an exception to be admissible. (See e.g, Evid. Code, § 1291.) However, the Legislature created a specific exception to this rule for section 1172.6 evidentiary hearings. As our colleagues in Division Four of the First Appellate District have explained in *People v. Davenport*, this "provision unambiguously provides that a trial court ruling on the merits of a resentencing petition 'may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony.' " (*People v. Davenport* (2023) 95 Cal.App.5th 1150, 1158

9.

(*Davenport*), citing § 1172.6, subd. (d)(3).)  Under section 1172.6, the admissibility of former testimony is not conditioned upon the prosecutor's ability to show that the witness is unavailable under Evidence Code section 1291.  Rather, "the basis for admission of testimony at the hearing or trial in which it was previously admitted must remain a valid basis for admitting the testimony 'under current law.' " (*Davenport,* at p. 1158.)

*Davenport's* interpretation of subdivision (d)(3) of section 1172.6 is consistent with the interpretation offered by Division Three of the Fourth Appellate District in *People v. Cody* (2023) 92 Cal.App.5th 87.  There, the appellate court addressed the admissibility of trial transcripts at a section 1172.6 evidentiary hearing, and specifically considered whether the prosecutor was required to demonstrate the unavailability of the trial witnesses under Evidence Code section 1291 as a precondition for admitting this evidence.  The appellate court recognized that subdivision (d)(3) of section 1172.6 states: " '[t]he admission of evidence in the [evidentiary] hearing shall be governed by the Evidence Code….' "  However, the court clarified that the law explicitly allows for the admission of former testimony, explaining, "the law has an explicit exception that provides for the admission of former testimony:  'The admission of evidence in the hearing shall be governed by the Evidence Code, *except that* the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including *witness* testimony….' " (*People v. Cody*, at p. 104.)

In this case, Julian's 1999 murder conviction was reversed following a successful petition for a writ of habeas corpus filed in federal court.  A petition for writ of habeas corpus, when granted, vacates the judgment of conviction and reinstates the petitioner "to the position she or he would be in if there had been no trial and conviction." (*In re Cruz* (2003) 104 Cal.App.4th 1339, 1346.)  Additionally, when a judgment against the defendant is reversed, the reversal is deemed an order for a new trial unless the appellate court directs otherwise. (§ 1262.)

According to Julian, where a conviction is reversed for a violation of *Batson/Wheeler*, an error which implicates the defendant's right to a fair trial, "nothing

10.

from that first trial [is] thereafter usable in a subsequent proceeding." Julian directs this court to section 1180, which explains that where a judgment is set aside so that the petitioner may receive a new trial, "[t]he granting of a new trial places the parties in the same position as if no trial had been had. All the testimony must be produced anew, and the former verdict or finding cannot be used or referred to, either in evidence or in argument, or be pleaded in bar of any conviction which might have been had under the accusatory pleading." We conclude that Julian reads section 1180 too broadly.

Section 1180 prohibits referencing or using a former verdict or finding, but it does not restrict the use of or reference to the trial evidence underlying that verdict or finding. Indeed, "[t]o prove what a witness swore to on a former trial *is* producing the testimony anew and is not using or referring to the former verdict in any sense." (*People v. Devine* (1873) 46 Cal. 45, 58, italics added.)

The fact that the challenged transcripts here originated from a jury trial which ultimately resulted in the reversal of the conviction did not preclude the trial court from relying upon the underlying trial evidence at the section 1172.6 evidentiary hearing. Even former testimony (Evid. Code, § 1291) has been held admissible in subsequent prosecutions where the defendant's first trial resulted in a mistrial, or as relevant here, in reversal of the conviction following a successful petition for writ of habeas corpus. (See *People v. Malone* (2003) 112 Cal.App.4th 1241, 1244 [where defendant's first trial ended in a mistrial, his testimony from the trial, including his admission that he had two prior convictions, was properly admitted at his retrial after he invoked his privilege not to testify]; see also, *People v. Wilson* (2005) 36 Cal.4th 309, 317, 347 [testimony of a jailhouse informant from the defendant's capital trial, the conviction for which was reversed following a petition for writ of habeas corpus, was admissible at his retrial under the former testimony exception]; and *People v. Alcala* (1992) 4 Cal.4th 742, 780 [finding that the testimony of a witness that testified at the defendant's capital trial, subsequently reversed for prejudicial error, was admissible at the defendant's retrial].)

11.

If former testimony is admissible in a retrial, where the defendant is entitled to the full panoply of constitutional rights, we have no doubt that the former testimony of a witness is also admissible at a section 1172.6 evidentiary hearing, which is "a voluntary sentencing procedure derived from 'an act of legislative lenity,' " rather than a Constitutional right. (*People v. Robinson* (2024) 106 Cal.App.5th 854, 872, quoting *People v. Hill* (2024) 100 Cal.App.5th 1055, 1067-1068; see *People v. Njoku* (2023) 95 Cal.App.5th 27, 44-45 [a section 1172.6 petitioner "does not posses many of the constitutional rights afforded to a criminal defendant at trial"]; *People v. Hill,* at p. 1068 ["Resentencing under section 1172.6 is a completely voluntary process initiated by the petitioner, which cannot result in additional punishment. [Citation.] It therefore does not implicate double jeopardy concerns, and there is no Sixth Amendment right to a jury"].)

Julian emphasizes that his murder conviction was reversed due to a *Batson/Wheeler* violation, one of the few errors so severe that it is prejudicial per se. (See *People v. Salinas* (2022) 77 Cal.App.5th 20, 41 [the remedy for a *Batson/Wheeler* violation "is reversal without any need to show prejudice, followed by the opportunity for retrial before an appropriately selected impartial jury"].) As explained in *Wheeler*, " 'The right to a fair and impartial jury is one of the most sacred and important of the guaranties of the constitution. Where it has been infringed, no inquiry as to the sufficiency of the evidence to show guilt is indulged and a conviction by a jury so selected must be set aside.' " (*Wheeler, supra,* 22 Cal.3d at p. 283.) But, beyond pointing out that his original conviction was reversed due to a *Batson-Wheeler* violation, Julian does not answer the question of why the trial evidence from his murder trial is no longer "admissible under current law." (§ 1172.6, subd. (d)(3).)

We find no reason to differentiate this case, including the type of error that led the reversal of Julian's murder conviction, from cases in which a defendant's original conviction was reversed due to a clear showing of prejudice. (See e.g., *People v. Acala, supra,* 4 Cal.4th 742; see also, *People v. Wilson, supra,* 36 Cal.4th 309.) While there may be circumstances which warrant the exclusion of former testimony at a section

12.

1172.6 evidentiary hearing, such as when a witness's prior testimony has been shown to be demonstrably false, we decline to hold that a *Batson/Wheeler* violation alone warrants the blanket exclusion of all such evidence.

Although Julian does not argue that the trial court's consideration of transcripts from his murder trial violated his right to procedural due process, we nonetheless address this consideration given its significance. A petitioner's rights at a section 1172.6 resentencing hearing are grounded in "procedural due process rights to a full and fair opportunity to contest the People's opposition to his resentencing petition." (See *People v. Robinson*, *supra*, 106 Cal.App.5th at p. 873, citing *People v. Schell* (2022) 84 Cal.App.th 437, 444.)

"Factors relevant to this inquiry take into account: 'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [third], the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' " (*People v. Njoku*, *supra*, 95 Cal.App.5th at p. 45, quoting *Mathews v. Eldridge* (1976) 424 U.S. 319, 335.)

First, the private interest at stake here is whether Julian is entitled to vacatur of his conviction for voluntary manslaughter, despite having pleaded no contest to this crime.

Second, the risk of erroneously depriving Julian of this interest is minimal, given the substantial procedural safeguards guaranteed to a section 1172.6 petitioner. Julian was appointed counsel to represent him in the section 1172.6 proceedings, which all section 1172.6 petitioners are entitled to upon request. (See § 1172.6, subd. (b)(3).) Regarding the trial transcripts that were admitted, the witnesses who testified at Julian's murder trial were subject to cross-examination. Any concerns about their testimony, the credibility of their claims, or Julian's culpability, could have been addressed by calling them as witnesses and questioning them during the evidentiary hearing on Julian's

petition. (See § 1172.6, subd. (d)(3) ["[t]he prosecutor and the petitioner may…offer new or additional evidence to meet their respective burdens"].)

In turn, the probable value of additional or substitute safeguards, such as requiring the prosecutor to present live testimony at the evidentiary hearing in lieu of relying upon transcripts from a prior proceeding, is not a viable alternative. The shooting in this case occurred in 1998, which is now over 26 years ago. There is a strong possibility that the witnesses may no longer recall many of the details surrounding the incident. (See *People v. Njoku, supra*, 95 Cal.App.5th at p. 44 [" 'the chances of obtaining live testimony from witnesses who remembered the events from years or decades earlier is small' "].) Under the circumstances, the witness's former testimony is often the best and most reliable evidence.

Finally, if none of the evidence from Julian's murder trial were admissible at a section 1172.6 evidentiary hearing, the fiscal and administrative burden on the government would be substantial. Live testimony would need to replace the use of former testimony, effectively requiring a full retrial. Balancing these factors, we are persuaded that admission of the murder trial transcripts at the evidentiary hearing, and the trial court's consideration of those transcripts in determining whether Julian was ineligible for resentencing relief, did not violate his procedural due process rights.

## 2. Failure to Authenticate the Trial Transcripts

Julian further asserts that the reporter's transcripts were not properly authenticated in accordance with Evidence Code section 1401, and therefore, should not have been received into evidence. Under the Evidence Code, authentication of a writing—including documents, audio recordings, and "every other means of recording upon any tangible thing" (Evid. Code, § 250) is required before the writing may be admitted into evidence. (Evid. Code, § 1401.) "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." (Evid. Code, § 1400.)

14.

Here, there were several methods by which the transcripts attached to the prosecutor's brief could have been authenticated, including the simplest solution, by stipulation of the parties. Had Julian timely raised this issue in the trial court below, we are confident that the error would have been corrected, and that the transcripts would have been properly authenticated. We therefore conclude that his failure to raise this issue below has resulted in forfeiture of his claim on appeal.

"[I]t is still generally the case that a defendant forfeits an argument on appeal where he fails to object at all to the evidence in the trial court or when he objects on substantively distinct grounds." (*People v. Flinner* (2020) 10 Cal.5th 686, 726, see also, *People v. Partida* (2005) 37 Cal.4th 428, 433-434 [" '[W]e have consistently held that the "defendant's failure to make a timely and specific objection" on the ground asserted on appeal makes that ground not cognizable' "].) Although the proponent of the evidence carries the burden to satisfy authentication requirements (see Evid. Code, § 1401), Julian's failure to object below procedurally bars him from asserting his claim on appeal. (See *People v. Farnam* (2002) 28 Cal.4th 107, 159; Evid. Code, § 353, subd. (a).) We therefore turn to his alternative claim of ineffective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel, an appellant is required to make a two-part showing. First, they must establish that "counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." (*People v. Kelly* (1992) 1 Cal.4th 495, 519-520.) Second, they must show that trial counsel's deficient performance was prejudicial. (*Ibid.*) Prejudice must be affirmatively shown; the record must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington* (1984) 466 U.S. 668, 694.)

It is settled that if the record reveals that an appellant has not suffered prejudice, we may resolve a claim of ineffective assistance of counsel on that basis alone. (*Strickland v. Washington, supra*, 466 U.S. at p. 697.) That is clearly the case here, as the

transcripts could have been authenticated if trial counsel had timely raised this issue below, and there was no dispute below as to the authenticity of the transcripts. We therefore conclude that Julian's claim of ineffective assistance of counsel fails.

### 3. Factual Findings Based Partially Upon Hearsay

Julian further contends that the partial reporter's transcripts attached to the prosecutor's supplemental trial brief, filed January 5, 2023, failed to identify the witnesses who were testifying, among other key facts. He further asserts that the trial court's finding that " 'Mr. Martinez was shot to death by Julian Reynoso's brother[,] John.' " is also unsupported by the partial transcripts. According to Julian, this information was supplied by statements in the prosecutor's brief, which are hearsay.

Once again, we conclude that Julian's failure to object below resulted in forfeiture of his claim on appeal. "[T]he failure to object to the admission of….hearsay at trial forfeits an appellate claim that such evidence was improperly admitted." (*People v. Stevens* (2015) 62 Cal.4th 325, 333; Evid. Code, § 353, subd. (a); see, e.g., *People v. Bolin* (1998) 18 Cal.4th 297, 320 [defendant waived claim that challenged eyewitness testimony in murder prosecution was hearsay by failing to make a timely and specific objection at trial].) " 'The reason for the [objection] requirement is manifest: a specifically grounded objection to a defined body of evidence serves to prevent error. It allows the trial judge to consider excluding the evidence or limiting its admission to avoid possible prejudice. It also allows the proponent of the evidence to lay additional foundation, modify the offer of proof, or take other steps designed to minimize the prospect of reversal.' " (*People v. Partida*, *supra*, 37 Cal.4th at p. 434.)

If Julian had objected to the trial court's findings as being based, in part, upon hearsay, the trial court could have reconsidered its ruling denying a request by the prosecutor to take judicial notice of the entirety of the trial transcripts.[9] The error would

---

[9] The prosecutor requested that the court take judicial notice of the entirety of the transcripts from Julian's murder trial. However, the court denied the prosecutor's request.

therefore have been easily corrected, if Julian had raised this issue below. Consequently, his claim of ineffective assistance of counsel fails. The record does not demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694.)

## II. The Trial Court's Failure to Find That Julian Acted With Reckless Indifference to Human Life/Sufficiency of the Evidence That He Acted as a Major Participant

Next, Julian claims that the trial court improperly concluded that he was a major participant "in the murder," and that the court failed to find that he had acted with reckless indifference to human life. We conclude that his interpretation of the record is mistaken.

The trial court did not make findings that Julian had acted as a major participant with reckless indifference to human life. But our review of the record persuades us that the court's omission of findings specific to this theory of murder liability was intentional as the available record does not suggest that this was a "felony murder" case.

"Under the felony-murder rule as it existed prior to Senate Bill 1437, a defendant who intended to commit a specified felony [such as a robbery] could be convicted of murder for a killing during the felony, or attempted felony, without further examination of his or her mental state." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247-248.) The charging instruments included in the record on appeal fail to indicate that Julian or John were ever prosecuted for murder based upon their participation in a non-murder felony. Nor does the available record from their trial demonstrate as much. While those considerations alone would not necessarily foreclose a defendant charged with first degree murder from pleading guilty or no contest to voluntary manslaughter under the felony murder rule, at no point during the proceedings on Julian's petition did the prosecutor ever suggest that Julian had acted as a major participant with reckless indifference to human life.

17.

We acknowledge that the trial court initially concluded that Julian was an "active and major participant in the murder of Mr. Martinez," a finding which mirrors the "major participant" language under the felony murder rule (§ 189, subd. (e)(3)). Considering this statement in the full context of the record however it was clear that the court was not making findings under the felony murder rule.

At the beginning of Julian's evidentiary hearing, the trial court explained that the issue before it was "whether or not [Julian] was convicted in this case … under the felony murder rule or [whether] he was convicted under a theory that he played a direct and active part in the murder of [Martinez]." The court subsequently concluded that "[Julian] was a direct and active participant in the murder of the victim" and that he had "act[ed] with [the] intent to kill." Thus, it appears the trial court was commenting that Julian was a *direct participant,* i.e., a principal, in the murder rather than a major participant in an underlying felony.

Based upon the foregoing, we do not address Reynoso's discussion of the factors set out in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522, which are relevant to whether he was a major participant that had acted with reckless indifference to human life.

### III. Sufficiency of the Evidence Demonstrating That Julian is Ineligible for Resentencing Relief Under Section 1172.6

The Attorney General contends that there is substantial evidence to support the trial court's finding that Julian is ineligible for resentencing relief under section 1172.6. Based upon the spare record before us, we are unable to agree.

#### A. Background

In entering a plea of no contest to voluntary manslaughter, Reynoso did not specify the theory upon which he was admitting liability. Nor did he admit to having acted with malice, express or otherwise. (See *People v. Gaillard* (2024) 99 Cal.App.5th 1206 ["malice is not an element of voluntary manslaughter (§ 192)"].) Thus, his petition appropriately proceeded to an evidentiary hearing.

Prior to the evidentiary hearing on Julian's petition, the prosecutor submitted extensive briefs to the court outlining how the trial evidence supported Julian's conviction for voluntary manslaughter under current law. As relevant here, those briefs included a trial brief detailing the evidence the prosecutor intended to offer at the evidentiary hearing, and a supplemental to the trial brief.

The prosecutor argued that based upon the trial evidence, Julian was a direct aider and abettor to Martinez's murder and that he had acted with the intent to kill. He explained that Julian and John had conspired to shoot Martinez, and that they had planned to claim that they were acting in self-defense. However, as illustrated below, because only partial transcripts were accepted by the court, the evidence did not support the prosecutor's theory of the case.

## 1. Arguments in the Prosecutor's Briefs Outlining What the Evidence Would Show

On the night of the shooting, the defendants were hanging out at M.P.'s residence with several others, including Martinez. At some point during the night, defendants learned that E.M. had thrown at bottle at M.P.'s vehicle. The defendants harbored animosity toward E.M., believing he was responsible for sending their brother to prison. They suggested that Martinez take care of E.M., but Martinez refused, resulting in an argument. The prosecutor theorized that following the argument, the defendants devised a plan to kill Martinez.

Julian had a gun concealed in his waistband. And, earlier that day, John brought a shotgun to M.P.'s house and hid it under a pillow.

Witnesses observed the defendants enter a bedroom together just minutes before the shooting. When they emerged from the bedroom, Julian questioned Martinez about whether he was carrying a rifle or a revolver and held Martinez's arm while patting him down. Julian told John that Martinez had a gun. John shot Martinez with a shotgun.

One of the witnesses, J.R., testified that when he heard the gunshot, he came into the living room from the kitchen to see what was going on. John pointed a gun at J.R.'s

face and warned him, " 'You better shut the fuck up.' " Julian told another witness, M.P., " 'don't mess around with them or she's gonna get it too.' " The defendants fled the home.

## 2. Evidence From the Partial Transcripts Attached to the Prosecutor's Supplemental Brief

The transcripts attached to the prosecutor's supplemental brief are comprised of nine pages from Julian's murder trial, and one page of the transcript from his 2012 change of plea hearing. These transcripts reflect the following:

### *Exhibit Nos. 1 through 5*

M.L.E. testified that when John came out of the bedroom, Martinez had one hand on his side. Julian restrained Martinez's right arm and was patting him down with his other free hand. Martinez looked confused and was trying to free his arm.

John had a 12-gauge shotgun in his hands. Without saying a word, John shot Martinez.

### *Exhibit Nos. 6 through 8*

A.E. observed Julian restraining Martinez's right arm, while patting Martinez down. The ensuing shotgun blast caused both Martinez and Julian to fall backward against the wall. Afterwards, Julian continued to search Martinez, trying to get something out of Martinez's pocket.

### *Exhibit No. 9*

During trial, Julian's trial counsel challenged the sufficiency of the evidence supporting his liability for murder. The trial court held that there was sufficient circumstantial evidence for the jury to return a verdict of first degree murder as to both John and Julian. According to the court, the uncontradicted evidence demonstrated that defendants were in a bedroom together, and that they must have been discussing the victim.

20.

*Exhibit No. 10*

The reporter's transcript from Julian's 2012 change of plea hearing establishes that the factual basis for defendants' plea was based upon (1) the transcripts from the murder trial; (2) the preliminary hearing preceding that trial; and (3) "all [of] the police reports."

### 3.  The Trial Court's Ruling on Julian's Petition

During the evidentiary hearing on Julian's petition, the trial court made the following relevant comments:

> "[THE COURT]:  The law was changed recently in terms of changing the felony murder rule to prevent conviction of those convicted of first degree murder that did not play a direct and active or major part in the murder of another human being.  That's not what happened in this case. Julian Reynoso was absolutely an active and major participant in the murder of Mr. Martinez.  To the extent the People have offered an alternate theory that he was an aider and abettor, he was that as well.  But the Court is not making that finding as its primary basis for its ruling today."

The court clarified that its findings, made beyond a reasonable doubt, included a determination that Julian acted with express malice.

### B.  Analysis

It is undisputed that John fired the gun that killed Martinez, and that he was the sole shooter.  John was therefore the direct and actual perpetrator of Martinez's murder. (See *People v. Vang* (2022) 82 Cal.App.5th 64, 88 [the term "actual killer" is limited to "the actual perpetrator of the killing, i.e., the person (or persons) who personally committed the homicidal act"]; *People v. Garcia* (2020) 46 Cal.App.5th 123, 152 ["the meaning of 'actual killer' ... is literal.  The actual killer is the person who personally kills the victim, whether by shooting, stabbing, or" other means]; *People v. Slough* (2017) 11 Cal.App.5th 419, 423 [" ' "[T]he meaning of the statutory requirement that the defendant *personally inflict* the injury does not differ from its nonlegal meaning. Commonly understood, the phrase 'personally inflicts' means that someone 'in person' [citation], that is, directly and not through an intermediary, 'cause[s] something (damaging or painful) to be endured' [citation]." ' "].)

21.

Absent evidence that Julian was a direct perpetrator, or that he acted as a major participant with reckless indifference to human life, his liability for murder depended upon whether he had acted as a direct aider and abettor that personally harbored malice—the theory advanced by the prosecutor during the petition proceedings below. The prosecutor asserted that John and Julian had conspired to kill Martinez, and that they had planned to claim they were acting in self-defense. At the conclusion of Julian's evidentiary hearing, the court made factual findings consistent with the prosecutor's theory, observing that the defendants had emerged from a bedroom together, that Julian restrained Martinez and patted him down just before the shooting, and that Martinez was trying to get away.

The court accepted the prosecutor's theory and concluded that Julian was an aider and abettor who had acted with express malice. However, we find the available record insufficient to support the trial court's determination. The partial transcripts attached to the prosecutor's motion, filed on January 5, 2023, establish that Julian aided and abetted John by restraining Martinez's arm, arguably allowing John to shoot Martinez. However, critical evidence of Julian's mental state is missing. The limited record before us does not supply direct or circumstantial evidence of the fact that Julian and John had planned Martinez's murder.

For example, the partial transcripts do not contain witness testimony establishing that John and Julian were in a bedroom together for several minutes, just prior to the murder. This would support the conclusion that they were likely conspiring to shoot Martinez. Although the trial court made findings consistent with this fact when it denied Julian's motion for a directed verdict during his murder trial, we decline to rely upon factual findings made during that trial, as the resulting judgment was reversed. (See § 1180.)

The available records do not show that an argument ensued between Martinez and the defendants, which would support the prosecutor's argument that following this

22.

argument, defendants formed a plan to kill Martinez. And critically, the records do not show that immediately after the shooting, Julian threatened one of the eyewitnesses. This would support the conclusion that Julian had intended for the murder to occur.

While the prosecutor's motion provides the missing factual background of the shooting, it is the trial transcripts, not the prosecutor's motion, that constitute the actual evidence. (See § 1172.6, subd. (d)(3) [governing what evidence is admissible at a § 1172.6 evidentiary hearing]; see also, CALCRIM No. 222 [statements by the parties' attorneys are not evidence].) Without further context surrounding the events leading up to and following the shooting, we are constrained to conclude that there is insufficient evidence to support the trial court's determination that Julian had acted with express malice.

We will therefore reverse the trial court's order denying Julian's petition for resentencing and remand the matter back to the lower court for a new evidentiary hearing.

## DISPOSITION

The trial court's order denying Julian's petition for resentencing is reversed. The matter is remanded back to the lower court for a new evidentiary hearing.

SMITH, J.

WE CONCUR:


DETJEN, Acting P. J.


PEÑA, J.

23.